19-7087 TIG Insurance Company, a successor by merger to International Insurance Company and International Surplus Line Insurance Company, Appellant v. Republic of Argentina, a successor to Caja Nacional de Auro y Seguro and Caja Nacional de Auro y Seguro, Mr. Bravion for the Appellant, Mr. Edelstein for the Appellee. Good morning, Mr. Bravion. You may proceed. Good morning. May it please the Court. In my opening, I will focus on how and why the Court should rule in TIG's favor on the narrowest of grounds, and I reserve five minutes for rebuttal. We ask the Court to decide a very narrow question of statutory interpretation. Does the FSIA Section 1610A abrogate execution immunity for a foreign state's property if the property is used for a commercial activity at the time a judgment creditor applies to the Court for such relief? The parties agree that no court in any circuit has ruled on this precise question. TIG urges the Court to establish a time-of-filing rule for determining commercial activity because it's based on a straightforward textual analysis. It's supported by congressional intent, a fair reading of the cases cited by both sides, and the common law time-of-filing principle that has applied in court decisions for over 200 years. You are said to have abandoned the totality-of-circumstances view as an alternative to that. Is that accurate to say you're abandoning that proposition? No, Your Honor. We're not abandoning totality-of-circumstances. It only became an issue after the District Court adopted time of writ for reasons that we felt were adequately addressed by the Third Circuit in Crystal X, where Crystal X said, no, time of writ is not correct. Totality-of-circumstances is correct. If the Court focuses on the narrowest of grounds, there isn't much to consider in terms of totality-of-circumstances except perhaps to understand what the commercial activity was at the time the writs were applied for. Don't we need to decide it correctly rather than necessarily in the narrowest possible way? The issue of when the sovereign loses the immunity on that property is a statutory issue that is before us. If you look at the National Bank of Oregon versus the Independent Insurance Agency, the unanimous Supreme Court said once the issue is before the court on a question of law, the court is obligated to decide it correctly even if the court is stipulated to leaving out one view. If that's the proper interpretation, the court still has to reach it. It seems that some of the problems that occur with using the time of writ and the time of filing do not get rid of all the problems with that. If the sovereign can just suddenly re-immunize its property by taking down the for sale sign, couldn't they also do that to defeat a time of filing if they get word a filing is about to happen? Do you understand what I'm asking? Actually, I'm having a little difficulty hearing. There's some interference in the line. Is it only my phone? I can hear it fine. Okay. Well, then I apologize. A problem with the time of writ used by the district court is that the sovereign can re-immunize property just in time to keep it from being attached. Wouldn't the same kind of problem exist if you use the time of filing? If the sovereign becomes aware that a filing is about to occur, the sovereign could take the for sale sign down and defeat the exception to the immunity that way, couldn't they? Isn't it the same kind of problem if we use time of filing? I understand the question now, Your Honor. Thank you. The issue of whether the facts in some other case might change shortly before the time of filing is something that would be useful to apply the totality of circumstances test to evaluate. It's not necessary. In this case, when Judge Kohler-Catelli looked at attachment by NML of the very same building, she thought that three months gap between the taking down of the for sale sign and the time of commencing the enforcement action was too long, but the record that was developed in that case and the opinion don't really provide enough facts to understand what the totality of circumstances were, and perhaps that would have helped her to more particularly decide that question. Mr. Bravid, you said in your list of factors that determine the outcome the language of the statute, but all the language of the statute tells you the property is used, is it in the present tense? It doesn't tell you when is the present tense, right? That's correct. If you just focused on the is, you would have those two choices, but there's another part of the statute that helps to distinguish, and that's the definition that Congress included in 1603D for commercial activity. If that's included in the actual analysis, the is has to be at the time of filing because otherwise, as we point out in our brief, all single transaction, single commercial act evidence that a creditor may bring to the court would be excluded because it has to happen before the case is brought. It can't still be ongoing at some later time. Right. Mr. Bravid, just the other textual concern that's raised is the contrast between the language of 1610A and 1610A2 and where 1610A2 says is or was, and it appears that you're really trying to read that same is or was into 1610A. How do you account for that difference, which ordinarily would lead us to assume that Congress meant to differentiate the two? against the property that was the subject of that contract, and Congress wanted to make it clear that the was allows for the court to consider events that otherwise might be too attenuated. Whether the three months in NML was too attenuated under the circumstances, we wouldn't know, but the underlying concern that Congress expressed about sovereigns manipulating the facts, that's a concern in every case, not just FSIA, but in particular, it's a concern here because that's exactly what happened. But why isn't that cut against you? Why isn't that cut against you? If there's that same concern about manipulation as the third circuit discusses in Crystallix, then Congress would have closed the door by adding is or was in 1610A. Well, we don't know exactly why the concern was expressed in the way it was. I think it might have been more fully explained, as I just did, by noting that when an A2 case is brought, there could be quite a long time between the cause of action accruing and the enforcement action. But the underlying concern, even if it were not expressed in the legislative history for 1610A2, it's a concern that this court needs to take account of because we're looking for an interpretation of the statute that's fair both to the sovereign and to the private creditor. That was Congress's intent, and that's a supervening intent that goes beyond this question that Argentina focused on about including the words in the legislative history for A2, but not for A6 or A generally. So Argentina's urging adoption of a time of writ rule because it changed the facts after TIG commenced its enforcement action. It wants a time of writ so it can continue to evade a creditor that twice arbitrated and won, went to court, confirmed the arbitral awards, and now seeks to enforce those judgments in accordance with federal policy that favors arbitration consistent with the New York Convention on Enforcement of Foreign Arbitral Awards. Sorry to interrupt, but in your very first sentence, I think you referred to the default rule of time of filing as a rule that goes back 200 years. Isn't that default rule principally for jurisdictional determinations, whereas our court in Weinstein has held that execution immunity isn't jurisdictional? Am I wrong that that's the longstanding default rule that you're referring to, that jurisdictional determinations are made by reference to time of filing? Is that a broader doctrine, or are there other doctrines you would point to? It is a broader doctrine. There's no reason why execution immunity in this case should not be subject to the same time of filing for the same reasons as were articulated by the Supreme Court in Dole and in other cases where the issue was not purely jurisdictional. In Dole, it was underlying a definition of an agency or instrumentality of a foreign state, but in other cases, it's been used to determine, for example, estoppel. There's no logical reason why it should be limited to jurisdictional cases, but even if it were, this issue of 1610A immunity is jurisdictional. The court has to determine whether Congress gave the court power to grant the release by stripping away execution immunity. It is a jurisdictional issue. Do either of my colleagues have any other questions? No further. Judge Pillar? Okay, we'll hear from Mr. Edelstein. Mr. Edelstein? Yes, thank you, Your Honor, and may it please the court. PIG's argument here is based on the fundamentally flawed premise that past commercial use of a foreign sovereign's property forever waives its immunity from execution. The court below correctly held… Mr. Edelstein, I don't take that to be their position. If they're adopting either time of filing or totality of circumstances, we don't see the Third Circuit, for example, saying, you know, any commercial activity at any time in the past is forever changed. That just sounds like a bit of a straw man. Well, Your Honor, I think in part that's due to the constantly changing nature of PIG's argument. In their opening brief in this court, they adopted totality of the circumstances in its entirety with only passing reference, if any, to time of filing. Now, at oral argument, they seem to be returning to time of filing. Neither of those presupposes that the change is forever, does it? You're saying now that they're arguing that it forever has lost its character. Now, that may be the case, but that isn't their argument, is it? Your Honor, it is to the extent that they read 1610A not to include a present tense requirement for use for a commercial activity. But even if we view the statute as written in the present tense, time of writ seems like an unusual way to accentuate that in contrast to time of filing. I mean, we have a lot of threshold legal determinations, as Mr. Brazen was arguing, that are key to the present in the sense of time of filing. I wonder what other threshold legal determinations can you point to that are key to time of issuance? Your Honor, I think it really just is time of writ. But, Your Honor, as you pointed out in questioning Mr. Brazen, the time of filing case law really does arise out of the jurisdictional context. And by that, I mean subject matter and personal jurisdiction. Well, what about, for example, what about motions to dismiss, which are assessed by allegations of a complaint, which are articulated at the time of the filing of the complaint? I mean, a lot of the activity in a case assessing personal jurisdiction, which may be more analogous to what we have here, it's not a subject matter jurisdiction inquiry. It's waivable, but we typically look to the allegations of the complaint. It's very unusual to have a court making a determination based on facts as they are going to be at the moment that the court issues its opinion. I can't think of another example. Can you? I don't know that there's another example, Your Honor, but this is explained fairly nicely in the Fifth Circuit's decision in F.G. Hemispheres, where they say that to the extent it's a jurisdictional question, it's a question of jurisdiction over the property, and in that case they happen to be speaking of a writ of garnishment, but they use the same language to talk about a writ of attachment or execution. It attaches or executes on the property when it's issued and served, and that's the moment that the court might make it. F.G. Hemisphere itself talks about the working interest share has been used for commercial activity in the United States, so it's not dealing with the differentiation that you have to make here between time of filing and time of issuance of the writ. That's not the concern in that case, and, in fact, the language in that case talked about has been used. It's on page 591 of F.G. Hemisphere. Your Honor, the has been used language, that takes back to the discussion that I was having before, that by abandoning a present tense and adopting a phrase of has been used for commercial activity, that's what would mean that foreign sovereign property would forever lose its immunity if it was used once for commercial activity. All I'm saying, Mr. Edelstein, is that you referred us to F.G. Hemisphere, and F.G. Hemisphere uses the phrase on 591, has been used for commercial activity, and on 592 were not used for commercial purposes, so it just doesn't seem to stand for the line that you're arguing for. That was my only point there. I understood, Your Honor, and the point that I was raising it for now was to say that F.G. Hemisphere explains why the time the court should be making its determination is the time of the writ. And what F.G. Hemisphere, in that particular discussion that I was referring to, which is on page 589, is speaking of the first of Section 1610A's two adjectival requirements, where 1610A requires the property be both in the United States and used for a commercial purpose. And there, the court in F.G. Hemisphere says, well, 1610A says in the United States. It doesn't say was in the United States or has been in the United States, and therefore the time that we should be making this determination is at the time we're making the writ. And that exact same grammar, that exact same logic applies to the second of 1610A's two adjectives used for commercial purposes. I guess another way of reading F.G. Hemisphere is consistent with a more totality of circumstances inquiry, because as the example that is used on that same page, 589, talks about a plane that's really a diplomatic plane, but once it touches down in the United States, when there's a need for commercial aircraft, that that wouldn't convert it. But that seems that that's more talking about, you know, let's look at the heft of, you know, let's look at what this really is, the character of this item. And a little bit less hung up in that opinion on formalistic time definitions. I just wanted to back up for a minute, because the use for commercial activity, you know, one of the parts, a key part of the district judge's analysis was that this is the present tense, and I'm not sure that's right. If we see used for commercial activity as an adjectival phrase, it doesn't necessarily have a specified time indicator. If it's like tables used for dining in contrast to tables used for working, it's more of, as I said, just an adjective. Do you have a response to that or disagree with that? I do have a response, and I think your example there is a very good one. A table used for dining versus a table used for working. Because of the nature of the current crisis, I happen to be working in my house. There is a table that many months ago I used for dining. Now it's up in my office or in my house covered in all of my papers. It's a table used for working. You wouldn't call it a table used for dining right now. The adjectives in Section 1610A, especially given that they are not modified by any verb tenses, and that's recognized by the court in F.G. Hemispheres. It's also recognized by the court in Aurelius where there's no verb saying will be used for dining, was used for dining. What matters is right now. Can you describe the table as a table used for dining? How do we know that it means right now as opposed to generally in the same sense as totality of circumstances? I don't see that as evident from the face of the statute. Well, it's evident from a few things, Your Honor. It is evident, we believe, from the face of the statute, from the fact that these adjectival phrases are not modified by any verb tenses. So at the time the court is looking to attach the property, the simple question is, do these adjectives properly describe the property at issue? Right now, the R Street property- Given the totality of the circumstances, do they correctly describe the property? Well, Your Honor, the issue we have with the totality of the circumstances is several. First of all, don't believe it has support in the language of the statute. The phrase used for commercial activity in the statute has no adverbs attached to it. It doesn't say primarily used or predominantly used. Right, right, right. Which is totally consistent with totality of the circumstances. If it were not totality of the circumstances, it might have some adverbs to take it out of the totality. Well, Your Honor, I think I disagree with that analysis. The court in Crystal X and in the ASCAP case from 2004 that it relies on to get to a totality of the circumstances, those courts actually insert adverbs where there are none. Predominantly, essentially. The other problem with the- Wasn't there two bills? Yes. Would you like me to continue or stop? Finish your answer and then I have a question. Sure. The other problem, as I was saying, with the totality of the circumstances test is that we think poorly reasoned. The Crystal X decision on that matter really just adopts it. The extent of the court's analysis is that it seems more appropriate. And there's no effort to engage with the text of Section 1610A, which is contrary to the principle that the court should not soften the import of Congress's chosen words, even if it believes those words are legal. I mean, this debate we're having here just convinces me that the word used doesn't answer the question. It does say present tense, but it doesn't answer the question about whether it's at the time of filing or at the time of writ. And what I just don't understand is why the court would adopt an interpretation of that word that would allow what happened here, where a party, a plaintiff wins an arbitration award or any other award and files suit, and then the defendant, Argentine in this case, is able to defeat it simply by taking it off the market. I just don't understand why we would adopt that interpretation. Your Honor, and the answer to that question is because that's the interpretation that Congress adopted. I just said I don't read used as driving the answer to that question, the use of the word used. Your Honor, and I'm sorry. That's all. You can go back to the language if you want, but I started my question by saying that I don't believe the word used answers the question, and therefore, why would I adopt the interpretation you're offering, which allows Argentina to escape simply by taking it off the market, taking the property off the market? Why would we do that? Yes, and you're right. I understand the question, and the answer is that Congress thought that the word used did answer the question. Okay. Well, you're not… The legislative… You're not… I'm saying I don't agree with that. If I don't agree with that, what's your argument? Do you want to answer that question or not? In other words, more functionally, so you're… You can't answer the question by telling me that the premise of my question is wrong. Understood, Your Honor. Okay, so what is the answer to my question? If I don't agree with that… Sure, the answer… Yeah. If you don't agree that used answers the question, the answer to the question of why you would adopt an interpretation that allows a sovereign to do what Argentina did is that the purpose of the FSIA is protection of sovereignty and sovereign immunity and the value that it protects is sovereignty. The backdrop of the FSIA was a common law of absolute immunity for foreign sovereigns. The exceptions to that immunity are in derogation of the common law and must therefore be construed narrowly. So an interpretation… Did you have a question? I was just going to ask in the same vein how you think Congress, if it meant time of writ, wasn't that undermining the particular commercial transaction or act part of the definition because under the time of writ interpretation, the foreign sovereign could presumably always abandon that single commercial transaction while the motion of protection was pending. So that language would also seem to push us in the direction of, even if we assess it by reference to time of writ, looking more broadly at the property's use over a certain period of time. Sure. You're right. I think the answer to that question actually does lie in Section 1610A2 in that the concern really is, I think, overblown in that a situation such as occurred here would only occur where a property could be removed from commercial activity without subjecting it to 1610A2 liability. And what I mean by that is if you have a particular transaction or occurrence, such as a sale that actually is reduced to a non-contingent sale contract, Argentina could not have removed the property from the market without opening itself up to a waiver of immunity to the contracting party. So it's a very particular circumstance that allows what happened here to happen. I don't think it – go ahead, I'm sorry. That's okay. I was just going to say if neither of my colleagues have any other questions. No questions. Okay. That's it for me, thanks. Okay. Let's see, Mr. Bravin, I think you were out of time, but if you have anything you would like to add, you can have one minute. Thank you, Your Honor. So quickly, the FG Hemisphere case was not as Argentina represented. FG Hemisphere's panel only focused on the location requirement. It's a requirement that must be in the present tense at the time of the court's decision so that the court can exercise power over the property. The panel there was banned by AFCAP, the Fifth Circuit's decision in 2004, and the panel referred to the fact that use for commercial activity had already been decided. Let me ask you, Mr. Bravin, what exactly is the rule that you would have us apply here? Sometimes you seem to be focusing on time of filing. Sometimes you're talking about circumstances. I can see, you know, looking at either the time of the writ or the time of the filing, but using that as a touchstone for a broader consideration of facts. I'm just not entirely sure if you could just, you know, boil it down, the rule that you're asking for. Thank you, Your Honor. So the narrowest way of resolving this case is on time of filing. But to deal with examples such as the absurd idea that Argentina advances that once commercial activity is established on the date of filing that it's forever non-immune for any case going forward, that's where totality of the circumstances comes in to say no. No, we're going to confine our analysis to the relevant circumstances. So we may go back three months. We may go forward a short amount of time, not for the purpose of allowing the sovereign to avoid its creditor, but to take into account relevant facts. But in this case, on the date of filing, it was certain. And there really isn't a need to come up with a more complicated analysis. In Section 1606 of the FSIA, Congress said, in effect, once an exception to sovereign immunity is established, immunity is no longer outcome determinative. The foreign state will be treated as a private party and its property as property of a private party. Under D.C. creditor's rights laws, this case would have been resolved on the day it was filed. And if the debtor had some exotic argument, like Argentina has. Mr. Brayden, finish up your well over time, please. They could have come in and attempted to quash the writs. In this case, we waited months, and we ended up with a result that is not based on any of that. Judge Miller, do you have any further questions? I'm done, thank you. Okay. Judge Sentell? Nothing. Okay. Mr. Brayden, thank you. Mr. Brayden, Mr. Edelstein, thank you both. The case is submitted. Thank you. Thank you.
judges: Tatel, Pillard, Sentelle